YATES, Presiding Judge,
concurring specially.
Historically, children born outside of wedlock were treated differently under the *1144 law than those born during marriage. See, e.g., Free v. Free, 507 So.2d 930 (Ala.Civ.App.l986)(noting the harshness of intestate inheritance rights as between illegitimate and legitimate children). The Legislature adopted the Alabama Uniform Parentage Act (“AUPA”) for the purpose of promoting full equality for all children, whether born during a marriage or born out of wedlock. Ex parte Presse, 554 So.2d 406 (Ala.1989). To accomplish this purpose, the AUPA sets out a procedure for establishing paternity of a child. Ritter v. State, 494 So.2d 76 (Ala.Civ.App.1986).
As Judge Crawley noted in his dissent in J.P.C. v. O.C.B., 797 So.2d 485, 492 (Ala.Civ.App.2000)(Crawley, J., dissenting), Alabama, like a number of other states, adopted a version of the 1973 Uniform Parentage Act (“UPA”). The drafters of the UPA and the Alabama Legislature, in its legislation adopting most of the UPA, included the presumption, originating from English common law, that a child born during the marriage was presumed to be the issue of the husband and the wife.
The presumed father has a choice whether he wants to “persist in the presumption that he is the father,” Ex parte Presse, 554 So.2d at 411, or to decline to assert the presumption, J.N.H. v. N.T.H., 705 So.2d 448 (Ala.Civ.App.1997). In Presse, the supreme court held that the biological father did not have standing under the AUPA to establish that he was the father of a child born during the marriage of the child’s mother to another man where the husband—the presumed father—persisted in asserting the presumption that he was the father of the child. The court stated:
“Being mindful that the [A] UPA espouses principles that seek to protect the sanctity of family relationships by providing a comprehensive statutory network through which a child may enforce its right of support against the presumed father, and because in this case the presumed father ardently wishes to fulfill this objective, we are constrained to hold that [the presumed fatherj’s presumption of fatherhood takes precedent over any presumption that [the biological father] might possess.”
554 So.2d at 412. In the presumed father did not persist in this presumption, and there was evidence indicating that the presumed father never recognized the child as his own.
In the present case, the presumed father is not persisting in his presumption of fatherhood as to the 10-year-old child born during his marriage to the child’s mother. My concern is that the courts, by allowing a presumed father, at his discretion, to accept a child he may have had little contact with, or to reject a child he has treated as his own, have given no consideration to the best interests of the child. A child may be psychologically damaged if the presumed father who has had less contact with the child than the biological father now asserts the presumption to the exclusion of the biological father,[3] and there may be harm to the child if the man the child knows as his father suddenly abandons him. In short, the courts have allowed presumed fathers to have it both ways (i.e., those who want to maintain the father-child relationship are allowed to do so and those who want to disavow the father-child relationship are *1145 allowed to do so), without considering the child’s best interests.
Our court has also favored the presumed father in applying the five-year statute of limitations of § 26 — 17—6(a), Ala. Code 1975, to actions brought to prove the nonexistence of a father-child relationship. A presumed father who wished to disavow paternity as to a child born during the marriage of the presumed father to the child’s mother was not barred by the five-year time limit set out in § 26-17-6(a) for bringing such an action. J.N.H., supra.[4] However, a natural mother pursuing a paternity action against a man she believes to be the biological father is barred by the five-year time limit from proving the nonexistence of a relationship with the presumed father. J.P.C. v. O.C.B., supra, 797 So.2d 485;[5] State ex rel. E.K.D. v. M.R.W., 662 So.2d 910 (Ala.Civ.App.1994).[6]
Although I believe that the best interests of the child should be given consideration in determining whether the presumed father can avow or disavow paternity, I agree that the five-year limitations period § 26-17-6(a) does not bar the action.

. In Presse, 554 So.2d 406, the child lived with the mother and the biological father and referred to the biological father as "Daddy.”

. I note, too, that a previously adjudicated father is not barred by the five-year time limit from reopening a paternity judgment based on scientific evidence that he was not the biological father. Ex parte Jenkins, 723 So.2d 649 (Ala.1998).

. I concurred in the majority opinion in J.P.C. However, I now believe that the five-year limitations period does not bar an action to prove the nonexistence of the presumed father-child relationship.

.I dissented in E.K.D. on the grounds that the Legislature did not intend the five-year limitations period to provide the biological father with a shield to avoid his duty to support his child. 662 So.2d at 913.